IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/11/2017

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SCOTT R. PENDERGRAFT | § | |
| DANIELLE-PAULINE PENDERGRAFT, | § | |
| | § | |
| DEBTOR(S) | § | CASE NO.          09-31423-H5-7 |
| | § | |
| NETWORK OF NEIGHBORS, INC., | § | |
| | § | |
| PLAINTIFF(S) | § | ADVERSARY NO.          12-3445 |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| SCOTT R. PENDERGRAFT | § | |
| DANIELLE-PAULINE PENDERGRAFT, | § | |
| | § | |
| | § | |
| DEFENDANT(S) | § | |

## O R D E R

Before the Court is Network of Neighbors, Inc.'s (NON) Complaint to Determine the Dischargeability of Debts. Debtors Scott Pendergraft and Danielle Pendergraft (now known as Danielle Dobiecki) befriended Squire Rushnell and Louise DuArt, the founders of NON, a charitable organization. Scott became NON's treasurer and Danielle served on NON's board of directors. Scott Pendergraft as treasurer diverted $51,531.47 of NON's funds to an entity controlled by Danielle Pendergraft. The Court determines Debtors' debt to NON in the amount of $43,486.30 to be nondischargeable due to their defalcation in a fiduciary capacity under 11 U.S.C. § 523(a)(4).

I. The Formation of NON

Danielle Pendergraft introduced herself to Squire Rushnell at an event on Martha's Vineyard in Edgartown, Massachusetts in December 2010. (Trial Tr. 10/6/2016, p. 39). She and Rushnell exchanged email addresses, and in the first week of January 2011, she emailed Rushnell. Danielle Pendergraft told Rushnell that she had founded a very successful $8 million business called Holiday Public Relations and Events (Holiday) in Houston, Texas, and was opening an office on Martha's Vineyard. (Trial Tr. 10/6/2016, p. 42-43). She told Rushnell that Debtors had a children's trust with over $10 million in assets. (Trial Tr. 10/6/2016, p. 46). Debtors moved to Edgartown in January 2011, to a residence on Water Street, a prestigious location. (Trial Tr. 10/6/2016, p. 43).

In early 2011, Rushnell and Louise DuArt (Squire Rushnell's wife)[1] wanted to form a web-based non-profit charitable organization. Along with Jeff and Janice Wooden, they began to form an organization, which they called Network of Neighbors. (Trial Tr. 10/6/2016, p. 38). Rushnell agreed to take money from his home equity loan as initial funding for NON, and then NON would raise additional money through a benefit event. Rushnell became the president of NON. (Trial Tr. 10/6/2016, p. 52). NON invited Debtors to join NON's board. Scott Pendergraft became NON's treasurer. (Trial Tr. 10/6/2016, p. 52).[2]

---

[1] Formerly employed as an actress.

[2] The Court infers that this took place after May 11, 2011, when NON and Holiday signed the engagement agreement, and before July 18, 2011, the earliest-dated check in evidence signed by Scott Pendergraft on NON's account at Edgartown National Bank.

NON was registered with the State of Massachusetts as a corporation. (Trial Tr. 10/6/2016, p. 109). NON's Bylaws were adopted effective on July 1, 2011. Article 9 of the Bylaws sets forth NON's treatment of conflicts of interest:

> Whenever a director or officer has a financial or personal interest in any matter coming before the board of directors, the affected person shall a) fully disclose the nature of the interest and b) withdraw from discussion, lobbying, and voting on the matter. Any transaction or vote involving a potential conflict of interest shall be approved only when a majority of disinterested directors determine that it is in the best interest of the corporation to do so. The minutes of meetings at which such votes are taken shall record such disclosure, abstention and rationale for approval.

(Defendants' Exhibit 1).

NON filed an application to be treated as a charitable organization pursuant to Section 501(c)(3) of the Internal Revenue Code to be effective on July 1, 2011. (Trial Tr. 10/6/2016, p. 95).

### a. The May 11, 2011 Agreement; the "Dorf" Fundraising Event

In May 2011, NON decided to create a summer charitable event. DuArt had toured with comedian Tim Conway, and Conway had agreed to perform (the Dorf event)[3] as a benefit show intended to introduce NON to the public. (Trial Tr. 10/6/2016, p. 53).

On May 9, 2011, Danielle Pendergraft emailed Rushnell and DuArt with a proposal. The proposal called for NON to pay $2,500 to Holiday for "unlimited design ." (Plaintiff's Exhibit 19, p. 1-2). Danielle Pendergraft attached an invoice for $2,500 to the proposal. (Plaintiff's Exhibit 19, p. 3). Rushnell testified that the items identified in the May 9, 2011 proposal were those goods and services Danielle Pendergraft represented Holiday needed for the Dorf event. (Trial Tr. 10/6/2016, p. 54-55).

---

[3]The event was called the Dorf event based on a character portrayed by Conway.

On May 11, 2011, NON and Holiday executed an agreement for the services outlined in Danielle Pendergraft's May 9 proposal. Rushnell and DuArt signed the agreement on behalf of NON. Danielle Pendergraft signed the agreement on behalf of Holiday. The agreement obligated Holiday to provide public relations services on a turnkey basis for $5,000, which Holiday would reduce to $2,500 as a charitable donation of services to NON. The agreement permitted Holiday to engage third-party vendors, and to incur costs and expenses charged by the vendors on NON's behalf. (Plaintiff's Exhibit 7C). NON did not at that time have its own bank account; so Rushnell and DuArt wrote a $2,500 check on their own checking account payable to Holiday. (Plaintiff's Exhibit 19, p. 4).

After the initial turnkey contract on May 11, 2011, Holiday submitted 14 invoices to NON.[4]

| 1. Invoice Dated 7/15/2011 (Plaintiff's Exhibit 1) in the total amount of $3,996.06. | | | |
|---|---|---|---|
| Line Item | Amount Holiday Billed | Amount Holiday Proved it Paid to Vendor | Evidence of Payment |
| Candy - LemonAid BrigAid | $150.68 | $125.68[5] | (Defendants' Exhibit 12) |
| Home Depot - LemonAid BrigAid | $541.05 | $0.00 | None |
| Misc Supplies, Cups - LemonAid BrigAid | $227.05 | $0.00 | None |
| Postage - NON Dorf | $320.00 | $0.00 | None |

[4]The first six invoices, dated from July 15, 2011 to October 3, 2011, identify the project for NON as "Initial PR - Edgartown, MA." (Plaintiff's Exhibits 1-6).

[5] Danielle Pendergraft testified that Holiday marked up the price it paid for the candy by $25.00 in the amount it invoiced to NON. (Trial Tr. 10/7/2016, p. 175).

| Shirts - LemonAid BrigAid | $415.00 | $0.00[6] | None |
| Donor Cards - NON General | $635.00 | $535.00 | (Defendants' Exhibit 12) |
| Envelope Printing - NON Dorf | $249.50 | $0.00 | None |
| Labels - LemonAid BrigAid | $259.50 | $229.50 | (Defendants' Exhibit 12) |
| Posters, Rack Cards - NON Conway | $693.28 | $0.00 | None |
| Vinyl Signage - LemonAid BrigAid | $505.00 | $0.00 | None |

**2.  Invoice Dated 7/25/2011 (Plaintiff's Exhibit 2) in the total amount of $1,534.76.**

| Line Item | Amount Holiday Billed | Amount Holiday Proved it Paid to Vendor | Evidence of Payment |
|---|---|---|---|
| Materials - NON Dorf | $112.56 | $0.00 | None |
| Event Liability 7/30/11 - NON Conway | $300.00 | $0.00 | None |
| Check-In Signs (6) - NON Conway | $450.00 | $654.75[7] | (Defendants' Exhibit 12) |
| NON Large Format (5) - NON Conway | $500.00 | | |
| Copies - NON Conway | $26.20 | $0.00 | None |
| Name Tags - NON General | $36.00 | $0.00 | None |
| Tags Other (220) - NON Dorf | $110.00 | $0.00 | None |

---

[6] This line item is only supported by an email listing a quote per piece; no other evidence shows that this item was actually paid by Holiday.  (Defendants' Exhibit 12).

[7]Danielle Pendergraft's ledger reflects that Holiday marked up the price it paid by $295.25 in the amount it invoiced to NON.  (Defendant's Exhibit 12).

**3.  Invoice Dated 7/25/2011 (Plaintiff's Exhibit 3) in the total amount of $3,908.89.**

| Line Item | Amount Holiday Billed | Amount Holiday Proved it Paid to Vendor | Evidence of Payment |
|---|---|---|---|
| Rentals - NON Dorf | $814.00 | $0.00[8] | None |
| Materials - NON Dorf | $127.34 | $0.00 | None |
| Trifold Inv w/Reply, Envelope (1,500) - NON Dorf | $1,501.05 | $584.63 | (Defendants' Exhibit 12) |
| Programs & Inserts (1,800) - NON Conway | $1,466.50 | $1,185.50 | (Defendants' Exhibit 12) |

**4.  Invoice Dated 8/1/2011 (Plaintiff's Exhibit 4) in the total amount of $12,385.20.**

| Line Item | Amount Holiday Billed | Amount Holiday Proved it Paid to Vendor | Evidence of Payment |
|---|---|---|---|
| Non Dorf Cocktail Event 7/29/11 | $12,385.20 | $6,385.20 | (Defendants' Exhibit 12) |

**5.  Invoice Dated 8/8/2011 (Plaintiff's Exhibit 5) in the total amount of $3,355.90.**

| Line Item | Amount Holiday Billed | Amount Holiday Proved it Paid to Vendor | Evidence of Payment |
|---|---|---|---|
| NON Donor Bifold 4-color Perforated Cards (2,500) | $3,355.90 | $0.00 | None |

**6.  Invoice Dated 10/3/2011 (Plaintiff's Exhibit 6) in the total amount of $1,775.00.**

| Line Item | Amount Holiday Billed | Amount Holiday Proved it Paid to Vendor | Evidence of Payment |
|---|---|---|---|
| Vinyl Signage - NON General | $1,775.00 | $0.00 | None |

---

[8]This amount is supported by a quote for $610.50, but not by an invoice, or any indication that this item was actually paid by Holiday.  (Defendants' Exhibit 12).

b. <u>The Alleged Second Contract For Web Design Services</u>

On November 14, 2011, Danielle Pendergraft submitted Holiday's seventh invoice to NON in the amount of $10,000. This invoice identified a new project: "Web Design/Prog." (Plaintiff's Exhibit 7A). Attached to the invoice was a second engagement agreement, which Rushnell and DuArt purportedly signed on behalf of NON and Danielle Pendergraft on behalf of Holiday. (Plaintiff's Exhibit 7B).

Rushnell denied signing a second engagement agreement. He testified that he did receive a form of engagement agreement by email, but never signed the agreement. (Trial Tr. 10/6/2016, p. 77). The proposed agreement called for Holiday to create a website for NON. The services Holiday was to render were listed in Exhibit B to the proposed second engagement agreement:

Design Services, as follows

- In conjunction with Client, determine optimal navigational routes and functionality of website;
- Graphic design of approximately 10 web pages;
- Prepare copy in the form of taglines and other navigational statements; and
- Package all for implementation and operational development by MVOL or other web developer as Client so directs at that developer's cost.

The proposed agreement called for Holiday to provide the services again on a turnkey basis for $10,000, of which Danielle Pendergraft would again waive $2,500 as a charitable donation of services to NON. (Plaintiff's Exhibit 22).

The purportedly signed second engagement agreement attached to the November 14, 2011 invoice contains different terms from those in the unexecuted proposed engagement agreement Rushnell received by email. The same services are identified, but the rate in the purportedly signed second engagement agreement is identified as $10,000, without a discount,

and the reference to the services being performed on a turnkey basis was eliminated. (Plaintiff's Exhibit 7B).

Rushnell testified that when he and DuArt signed the May 11, 2011 engagement agreement, they were asked to sign two signature pages. He testified that the second signature page appears to have been saved without his permission for a later date. (Trial Tr. 10/6/2016, p. 80-81). The Court finds Rushnell's testimony credible, and finds that Rushnell and DuArt did not sign the purported second engagement agreement. The Court finds this supposed second engagement agreement is false.

Holiday submitted five invoices related to the false second engagement agreement. Rushnell testified that NON hired MVOL to do web building, amounting to an initial payment of approximately $2,500.00. The eighth invoice Holiday submitted to NON, dated November 15, 2011, provides again for payment of $2,500.00 for the services of MVOL. (Plaintiff's Exhibit 8).

NON ultimately decided MVOL's work was not usable and would not pay any further funds to MVOL. (Trial Tr. 10/6/2016, p. 82-83). Nevertheless, Holiday submitted an invoice[9] to NON on January 30, 2012 for $10,830.00 for MVOL's alleged services. (Plaintiff's Exhibit 12).

Rushnell testified that NON received a $10,000 grant. (Trial Tr. 10/6/2016, p. 84). In deposition, Scott Pendergraft testified that Debtors alone decided to use the grant money to pay Holiday's January 30, 2012 invoice. (Plaintiff's Exhibit 18, p. NON 0145).

The eleventh invoice is dated January 6, 2012. It has two line items. The first is "1.25 hours Design/Consulting @ $285/hr Dec 2012 HPRE Web Design/Prog Project" in the amount

---

[9]The twelfth invoice--the ninth through eleventh invoices are addressed below.

of $356.25.  The second is "Color Copies" in the amount of $68.75.  Defendants presented no invoices, documents, or testimony to support these line items.

The thirteenth invoice is dated February 15, 2012.  It has two line items.  The first is "5.0 hours Design/Consulting @ $285/hr Jan 2012 HPRE Web Design/Prog Project" in the amount of $1,425.00.  The second is "Postage" in the amount of $2.40.  Defendants presented no invoices, documents, or testimony to support these line items.

The fourteenth invoice is dated March 23, 2012.  It has two line items.  The first is "2.5 hours Design/Consulting @ $285/hr Feb 2012 HPRE Web Design/Prog Project and Essay" in the amount of $712.50.  The second is "Color Copies" in the amount of $12.50.  Defendants presented no invoices, documents, or testimony to support these line items.

### c.  Unrelated Holiday Invoices

The ninth and tenth Holiday invoices, dated December 5 and 22, 2011 identify the project as "Edgartown, MA."  (Plaintiff's Exhibits 9-10).

The ninth invoice dated December 5, 2011 has three line items.  The first is "Christmas in Edgartown 3.0 hours @ $285/hr" in the amount of $855.00.  (Plaintiff's Exhibit 9).  Defendants presented no invoices, documents, or testimony to support this line item.  The second is "Christmas in Edgartown - Candy" in the amount of $90.66.  This line item is supported by an invoice from a candy company.  (Defendant's Exhibit 12).  The third item is "Christmas in Edgartown - Posters" in the amount of $112.50.  Defendants presented no invoices, documents, or testimony to support this line item.  The ninth invoice also reflects a credit of $142.50 labeled "Per D. Pendergraft Charitable .50 hours."

The tenth invoice is dated December 22, 2011. It has two line items. The first is "Donor Ackn Tax Mailing - Letters/ Envelopes (130)" in the amount of $162.50. The second is "Donor Ackn Tax Mailing - Postage" in the amount of $28.60. Defendants presented no invoices, documents, or testimony to support these line items. The tenth invoice also reflects a credit of $83.50 labeled "Per D. Pendergraft Charitable."

## II. Payment of the Invoices

Scott Pendergraft, as treasurer of NON, personally received all Holiday invoices. As treasurer he then signed each check to Holiday drawn on NON's bank account, which totaled $51,531.47. (Plaintiff's Exhibits 1-14).

## III. Debtors' Charade Is Revealed

Debtors represented themselves to Rushnell and DuArt as very successful, wealthy individuals. In truth, Debtors had already filed this Chapter 13 bankruptcy case, Case No. 09-31423-H5-13, on March 2, 2009. In addition, Danielle Pendergraft also signed the petition in Case No. 07-30670-H5-7, concerning her previous business, Events Planned Perfectly LLC (EPP). (Docket No. 1, Case No. 07-30670-H5-7). The EPP case was closed as a no-asset Chapter 7 case. (Unnumbered Docket Entry, September 17, 2009, Case No. 07-30670-H5-7).

Debtors' initial schedules reflect that they had total monthly income of $10,000 (all allocated to Danielle Pendergraft) from Holiday on the date of filing. (Docket No. 10, Case No. 09-31423-H5-13). On May 1, 2009, Debtors amended the schedules to reflect that the $10,000 monthly income was allocated half to Scott Pendergraft and half to Danielle Pendergraft. (Docket No. 25, Case No. 09-31423-H5-13).

Holiday and EPP had the same address.  (Trial Tr. 10/7/2016, p. 158).  Debtors argue they do not own Holiday.  Scott Pendergraft testified the Pendergraft Children's Irrevocable Trust owns Holiday.  (Trial Tr. 10/7/2016, p. 93).  Danielle Pendergraft explained that she formed Holiday as an entity owned by the trust on advice of counsel, since she had personally guaranteed some of the debts of EPP, she intended to protect Holiday from these personal debts by putting ownership in name of the trust.  (Trial Tr. 10/7/2016, p. 197).

Nevertheless, Debtors used Holiday's bank account as their own personal account. NON's checks were deposited to Holiday's account at Edgartown National Bank. Debtors' purchased from that account airline and steamship tickets, furniture, meals, clothing, hotel stays, and at least one payment to the Chapter 13 Trustee under Debtors' plan.  (Plaintiff's Exhibit 26). There is no evidence that the Pendergraft Children's Irrevocable Trust operates Holiday.  The Court finds that the trust's ownership of Holiday was a sham.

### IV.  <u>Debtors' Self-Dealing Without Notice to NON Constitutes Defalcation</u>

Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  Defalcation "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, --- U.S. ----, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013).

Under either Texas or Massachusetts law, the directors and officers of a corporation owe a fiduciary duty to it.  *In re Harwood*, 637 F.3d 615 (5th Cir. 2011); *American Discount Corp. v. Kaitz*, 206 N.E.2d 156 (Mass. 1965).  The fiduciary duties of directors and officers of nonprofit corporations are equivalent to those of for-profit corporations.  *In re Whitaker*, 642 Fed.

Appx.345 (5th Cir. 2016); *In re Boston Regional Medical Center, Inc.*, 328 F.Supp.2d 130 (D. Mass. 2004).

Debtors' self-dealing amounts to a criminal state of mind.  The NON Bylaws required that such self-dealing transactions must be approved by NON's disinterested directors.  Defendants' Exhibit 1).  Nevertheless, there was no such approval by NON and Debtors diverted NON's funds to their own business, Holiday,

The transactions may be divided into three groups. The first group includes transactions clearly contemplated under the May 11, 2011 engagement agreement, and as to which Debtors provided evidence of the underlying payments to vendors.  There was no defalcation as to the first group.  The sum of payments related to transactions in the first group is $10,310.76.

The second group includes transactions purportedly contemplated under the May 11, 2011 engagement agreement, and as to which Debtors provided no evidence of the underlying payments to vendors.[10]  The court finds from the absence of evidence of payment to the vendors, as well as the totality of circumstances surrounding Debtors' portrayal of themselves in a false light, that Debtors diverted these funds to themselves in defalcation of their fiduciary duties to NON. The sum of payments related to transactions in the second group is $16,645.05.

The third group includes transactions after the date of the fake second engagement agreement.  Debtors forged the appearance of a contract, and all the services billed thereunder involve self-dealing.  Debtors did not present the transactions to NON's disinterested directors.  Instead, they diverted the funds to themselves.  The Court finds that Debtors committed defalcation and fraud as to the third group of transactions.  The sum of payments related to

---

[10]This group includes the markup billed to Holiday on these services.

transactions in the third group is $26,841.25.  The Court concludes that Debtors' debt to NON, in

the amount of $43,486.30, is excepted from discharge under Section 523(a)(4) of the Bankruptcy

Code.


Signed this _11ᵗʰ_ day of _May_ , 2017at Houston, Texas.


KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE